UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>V.J. ASSOCIATES, INC. OF SUFFOLK,<br><br>Defendant | Criminal No. 20cr10257<br><br>Violation:<br><br>Count One: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

INFORMATION

At all times relevant to this Information:

General Allegations

Relevant Entities

1. Defendant V.J. ASSOCIATES, INC. OF SUFFOLK ("VJA-SUFFOLK") is a New York corporation with its headquarters in Hicksville, New York.

2. Co-Conspirator VJ Associates of New England, Inc. ("VJA-New England") is a Massachusetts corporation with its headquarters in Needham, Massachusetts.

3. VJA-SUFFOLK and its owners manage the employees and operations of VJA-New England and other affiliates. VJA-New England supervisors and management reported directly to VJA-SUFFOLK management. (Hereafter, VJA-SUFFOLK and VJA-New England will be referred to as "VJA.")

General Background on VJA's Business

4. VJA provides cost estimating and scheduling services for public and privately funded construction projects. For cost estimation services, VJA forecasts costs and resources

necessary to complete a project. For scheduling services, VJA plans a schedule for the project's completion and estimates the time necessary to achieve project milestones.

5. Many infrastructure projects for which VJA provided services required "time-and-expense," or "T&E," billing. Generally speaking, T&E projects required VJA to bill fees for its services based on employees' hours worked at agreed-upon hourly rates.

6. T&E projects often included a fee cap. If VJA's total fees on a project were less than the fee cap, then VJA was paid only its total fees. By contrast, if VJA's total fees exceeded the fee cap, VJA was only paid an amount equal to the fee cap.

7. Other construction projects for which VJA provided services required "fixed fee" billing. On a fixed fee project, VJA received a set fee regardless of the number of hours that its employees worked.

8. The manner in which VJA billed a project created different incentives for VJA and its employees. For example, VJA had an incentive for its employees to work as few hours as possible on fixed fee projects because no matter how little the employees worked on those projects, VJA received the full fee. By contrast, VJA had an incentive for its employees to maximize the number of hours billed on T&E projects in order to try to capture as much of the fee available up to the fee cap.

9. The U.S. Department of Transportation, the State of New York, and/or the Commonwealth of Massachusetts funded many of the projects for which VJA provided services.

Overview of the Conspiracy and Scheme to Defraud

10. From in or about January 2007 through August 2018, VJA-SUFFOLK, VJA-New England, and co-conspirators known and unknown to the U.S. Attorney, conspired to engage in a scheme to bill bogus and unnecessary hours to T&E projects funded by the U.S. Department of

2

Transportation, the State of New York, and the Commonwealth of Massachusetts. As part of the conspiracy, VJA and its co-conspirators agreed to: (1) create false timekeeping records on T&E projects that overstated the number of hours that VJA employees actually worked on those T&E projects; and (2) bill projects for fees based on those false and overstated timekeeping records.

### Object and Purposes of the Conspiracy

11. The primary object of the conspiracy was to commit wire fraud by engaging in a false billing scheme. The purpose of the conspiracy was to increase earnings for VJA on current and future projects.

### Manner and Means of the Conspiracy and Scheme to Defraud

12. Among the manner and means by which VJA and co-conspirators known and unknown to the U.S. Attorney carried out the conspiracy and the scheme to defraud were the following:

   a. Creating false time records that overstated the number of hours employees worked on T&E projects;

   b. Billing projects for hours that VJA employees did not work, for hours that VJA employees worked on unrelated projects, and/or for unnecessary or duplicative hours.

### Acts in Furtherance of the Conspiracy and the Scheme to Defraud

13. On or about various dates between January 2007 and August 2018, VJA-SUFFOLK, VJA-New England, and co-conspirators known and unknown to the United States Attorney engaged in the following acts in furtherance of the conspiracy and the scheme to defraud, among others.

*MBTA Charlestown Bus Facility Project*

14.     The MBTA Charlestown Bus Facility project ("Charlestown Bus Project") was a public transportation project in Massachusetts that required T&E billing. The U.S. Department of Transportation and the Commonwealth of Massachusetts funded the project.

15.     On or about October 18, 2016, an estimator at VJA-New England sent the following interstate email to a scheduler at VJA-SUFFOLK, asking that he start "tagging hours" because not enough had been billed against the Charlestown Bus Project:

| | |
|---|---|
| Estimator: | "This job is a T&E and we have approx. $33K !!! worth to bill for your scheduling efforts. Please make sure you are tagging hours for this phase to get close to the $33,961 Start this week or if others need to put hours toward a job, please use liberty, thanks . . . ." |
| Scheduler: | "Yes I know." |

16.     On or around November 3, 2016, the same estimator at VJA-New England sent the following interstate email to a scheduler at VJA-SUFFOLK, copying VJA-SUFFOLK executive management, asking the scheduler to add fake or unnecessary hours to a phase of the Charlestown Bus Project:

| | |
|---|---|
| Estimator: | "Get busy juicing the scheduling hours on this job. It's T/E. [The current] phase has a T/E amount of $28,961 and to date you only have $5,715 against it. Maybe you can do the same schedule 5 more times and get up to $28k or have some other people put hours against this phase." |
| Scheduler: | "Will manage don't worry." |
| Estimator: | "I don't have a doubt . . . . Happy allocating." |

17.     Between approximately October 2016 and November 2016, the estimator and the scheduler added fake and unnecessary hours to the Charlestown Bus Project.

18. Around the same time, the estimator also instructed a colleague he supervised to add hours to the Charlestown Bus Project. The colleague billed time to the project even though he did no work on the project.

19. Between approximately October 2016 and July 2017, VJA-SUFFOLK, using interstate wires, overbilled the U.S. Department of Transportation and the Commonwealth of Massachusetts for the Charlestown Bus Project based on bogus hours worked.

*Taunton State Hospital Cain Laundry Project*

20. The Taunton State Hospital Cain Laundry project ("Cain Laundry Project") was a facility upgrade for a state-owned building in Massachusetts that required T&E billing. The Commonwealth of Massachusetts funded the project.

21. On or around December 7, 2017, a VJA estimator for the Cain Laundry Project had an in-person conversation with a senior estimator at VJA-New England where he explained that he spent about five hours completing the project, but billed 50 hours in order to earn most of the fee:

| | |
|---|---|
| Senior Estimator: | "How many hours did you have on that [the Cain Laundry Project]? You said that was a nice easy job. . . ." |
| Estimator: | "Took me a day." |
| Senior Estimator: | "A day? So 8 hours?" |
| Estimator: | "Yeah. . . . If it is [T&E], then I bumped it up. Check into it. I think it [the fee] was $9,000. Check into it. . . ." |
| | [. . .] |
| | "Oh yeah, yeah, yeah. I think I spent $950 on that one… Yeah, that was . . . Yeah. Look at that – 50 hours." [Laughter.] |
| Senior Estimator: | "How many of those 50 are actual?" |
| Estimator: | "About 5." [Laughter] |

5

22. In or about December 2017, VJA-SUFFOLK, using interstate wires, overbilled the Commonwealth of Massachusetts for the Cain Laundry Project based on bogus hours worked.

*Massport Hanscom Airport Rescue and Fire Fighting Facility Project*

23. The Massport Hanscom Airport Rescue and Fire Fighting Facility Project ("Hanscom Project") was a transportation project in the Commonwealth of Massachusetts that required T&E billing. The U.S. Department of Transportation and the Commonwealth of Massachusetts funded the project.

24. On or about November 17, 2017, a VJA-New England senior estimator discussed, in person, how to change hours on his time sheet with his supervisor, in order to use up the fee on the Hanscom Project:

| | |
|---|---|
| Senior Estimator: | "Hanscom, this is a big T&E job. We've got $18,000 in fee. We're going to end up at around $10 or $11,000." |
| Supervisor: | "Alright." |
| Senior Estimator: | "I'm only going to have four hours in it. . . ." |
| Supervisor: | "I might ask [another estimator] to put those [other project's] hours on Hanscom. . . ." |

[Discussing the Senior Estimator's time sheet.]

| | |
|---|---|
| Senior Estimator: | "Down here on office work, I've got 11 hours in office work. . . ." |
| Supervisor: | "I would put some hours on Hanscom. Put your [other project] hours on Hanscom. . . . |

25. On or about the same day, a VJA-New England estimator discussed, in person, with the senior estimator how he had padded the Hanscom Project at the direction of another VJA-New England estimator:

6

| | |
|---|---|
| Senior Estimator: | "I want to talk to you first about last week's hours on Hanscom. You worked [three other projects] last week . . . ." |
| Estimator: | "And Hanscom too." |
| Senior Estimator: | ". . . but you billed all of your hours to Hanscom. [The project manager] told you to? |
| Estimator: | "Yeah." |
| Senior Estimator: | "[W]hatever your [project manager] tells you to do of course you do . . . ." |

26. In or about December 2017, VJA-SUFFOLK, using interstate wires, overbilled the U.S. Department of Transportation and the Commonwealth of Massachusetts for the Hanscom Project based on bogus hours worked.

*Other Acts in Furtherance of the Conspiracy and the Scheme to Defraud*

27. At various times between approximately 2007 and 2012, VJA executive management, operating principally from VJA-SUFFOLK's offices, encouraged employees to record hours in pencil on timesheets, so that they could later change their hours.

28. On or about September 25, 2017, VJA executive management complained to a VJA-New England senior estimator, during an in-person meeting, that "[t]he problem was that the T&E was like money left on the table" where the senior estimator did not maximize the fees on those projects. VJA executive management also told the senior estimator that, where VJA had only billed $3,500 on a T&E project with a $15,000 cap, the senior estimator should "[s]tudy the drawings and see what and all those things so that we can really put some hours on it."

29. On or about September 25, 2017, VJA executive management encouraged a VJA-New England supervisor to bill time that the supervisor worked on a certain project ("Project A") to a different project ("Project B") on which the supervisor did not work. VJA executive management encouraged the supervisor to incorrectly bill the supervisor's time because VJA had

7

used up the fees for Project A. If the supervisor billed his time to Project B, however, VJA would be compensated for the supervisor's time because VJA had not used up Project B's fee.

30. On or around September 28, 2017, an estimator at VJA-New England told a senior estimator, during an in-person conversation, that he is "proactive with the pad[ding of time sheets on T&E projects] from the beginning [of the project]" "because we know that [VJA executive management] is looking at the number, like why are you giving back so much money."

31. On or around December 4, 2017, a VJA estimator, during an interstate telephone call, explained to a senior estimator at VJA-New England how to carry out the fraud: "T&E is my first port of call . . . even if I haven't done anything, that gets wrapped up to the maximum. . . . It's a shell game." He explained that VJA executive management "gave him a bit of trouble in the beginning and then he realized what they wanted done. And I thought, they pay me every two weeks, what the hell. I'm not the boss."

<u>COUNT ONE</u>
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

The United States Attorney charges:

32. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 31 of this Information.

33. From in or about at least January 2007 through in or about August 2018, in the District of Massachusetts and elsewhere, the defendant,

V.J. ASSOCIATES, INC. OF SUFFOLK,

conspired with others known and unknown to the U.S. Attorney to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

34.  Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One of this Information, the defendant,

**V.J. ASSOCIATES, INC. OF SUFFOLK,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

35.  If any of the property described in Paragraph 34, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant—

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 34 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

_____
EVAN J. GOTLOB
BRIAN M. LAMACCHIA
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

Date: 10/28/202_